Louise D. THOMAS, Dennis D. Darden, and Linda Jean Allen, On behalf of themselves and all others similarly situated, Plaintiffs,

v.

SMITHKLINE BEECHAM CORP. et al., Defendants.

Civ.A. No. 00–2948.

United States District Court, E.D. Pennsylvania.

July 3, 2001.

Paula R. Markowitz, Markowitz & Richman, Philadelphia, PA, Philip Stephen Fuoco, Haddonfield, NJ, John Shniper, Phoenixville, PA, for plaintiffs.

Laurence Z. Shiekman, Brian T. Ortelere, Michael H. Rosenthal, Greg A. Rowe, Pepper, Hamilton & Scheetz, Philadelphia, PA, for defendants.

### Memorandum and Order

YOHN, District Judge.

Louise D. Thomas, Dennis D. Darden, and Linda Jean Allen [collectively "named plaintiffs"] bring this action on behalf of themselves and all similarly situated persons [collectively "class" or "plaintiffs"] against SmithKline Beecham Corporation ["SB"], various SB employee benefit plans ["benefit plans"], and the administrators of those benefit plans ["administrators"] [collectively "defendants"]. The plaintiffs seek declaratory, equitable, and legal relief establishing their rights to receive benefits from SB under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 et seq. Currently before the court is the named plaintiffs' motion to certify the action as a class action pursuant to Federal Rule of Civil Procedure 23. After considering the named plaintiffs' amended complaint (Doc. No. 5), named plaintiffs' motion for class certification ["Pls.' Mem."] (Doc. No. 14), defendants' opposition thereto ["Defs.' Mem."] (Doc. No. 15), named plaintiffs' reply ["Pls.' Reply"] (Doc. No. 16), defendants' surreply ["Defs.' Surreply"] (Doc. No. 17), numerous supplementary filings, and oral argument, the court concludes that certification of the proposed class of approximately 1,100 individuals who were sent the April 2000 "Dear Colleague" letter from SB is proper and that Thomas and Darden are proper class representatives.

## FACTUAL BACKGROUND

The three named plaintiffs "work" or have "worked" at SB. Thomas received work assignments at SB from Olsten Temporary Services, an employment agency. *See* Am. Comp. ¶ 51. Beginning in October 1992, Thomas worked full-time as a coordinator in a SB warehouse in King of Prussia, Pennsylvania. *See id.* ¶¶ 51–52. Thomas contends that she was a common law employee of SB. *See id.* ¶ 53. In April 1994, Thomas was laid off by SB. *See id.* ¶ 54. However, in December 1994, Thomas was notified by SB that the coordinator job was available, and that, if she was interested in returning to work at SB, she should report to Kelly Services, an employment agency. *See id.* ¶¶ 55–56. Soon thereafter, Thomas reported to Kelly Services, which was located at SB's King of Prussia warehouse, and returned to work at SB. *See id.* ¶¶ 57–58. On March 1, 1999, Thomas became a full-time active employee of SB. *See id.* ¶ 60. On October 21, 1999, Thomas, through her attorney, requested that SB treat her employment prior to March 1, 1999 as common law employment for purposes of SB's benefit plans. *See id.* ¶ 61. On January 20, 2000, SB notified Thomas that her employment prior to March 1, 1999 would be treated as that of a "leased employee," and, therefore, she had not begun to accrue benefits until March 1, 1999. *See id.* ¶¶ 63–64. Thomas appealed the denial of benefits but SB again denied her claims. *See id.* ¶¶ 65–67. In April 2000, Thomas received a form letter from SB stating that SB might owe her some retirement benefits. *See* Pls.' Mem. Ex. A.

Darden received work assignments at SB from Kelly Services. *See* Am.Comp. ¶ 73. Beginning in October 1993, Darden worked full-time as a material handler in a SB warehouse in King of Prussia, Pennsylvania. *See id.* ¶¶ 73–74. Darden contends that he was a common law employee of SB. *See id.* ¶ 76. On March 1, 1999, Darden became a full-time active employee of SB. *See id.* ¶ 77. On January 21, 2000, Darden, through his attorney, requested that SB treat his employment prior to March 1, 1999 as common law employment for purposes of SB's benefit plans. *See id.* ¶ 78. On February 4, 2000, SB notified Darden that his employment prior to

March 1, 1999 would be treated as that of a "leased employee," and, therefore, he had not begun to accrue benefits until March 1, 1999. *See id.* ¶¶ 79–80. Darden appealed the denial of benefits but SB again denied his claims. *See id.* ¶¶ 81–83. In April 2000, Darden received a form letter from SB stating that SB might owe him some retirement benefits. *See* Pls.' Mem. Ex. A.

Allen began working on the premises of SB in 1968 as a "temp" worker. *See* Am. Compl. ¶ 89. After leaving in 1970 to have a family, she returned to work as a "temp" at SB in 1978. *See id.* ¶¶ 89–90. Soon thereafter, Allen became a regular full-time employee. *See id.* ¶ 90. However, in May 1981, Allen was laid off. *See id.* ¶ 91. In February 1982, Allen returned to work as a part-time "temp" at SB. *See id.* In 1988, she began working essentially full-time hours. *See id.* ¶ 92. In May 1994, a supervisor told Allen that she would have to receive her assignment to work at SB through Kelly Services or she would be laid off. *See id.* ¶ 93. Allen reported to Kelly Services and continued working on the premises of SB until December 1998 when an injury required her to stop working. *See id.* ¶ 94.

The named plaintiffs claim that SB has violated the rights of a large number of individuals to accrue benefits in SB employee benefit plans. *See id.* ¶ 14. The named plaintiffs claim that their experience working for SB is representative of those of this larger group of individuals. *See id.* ¶ 16. The defendants have admitted that, in addition to Thomas and Darden, over 1,100 other individuals were sent a form letter from SB in April 2000 regarding an error SB apparently made in calculating the retirement benefits (or eligibility and vesting credits) of full-time active employees of SB who had previously worked for a temporary employment agency at SB. *See* Pls.' Mem. 12 (citing Ex. C, Dep. of Serocca p. 59).

## PROCEDURAL BACKGROUND

On June 9, 2000, Thomas and Darden brought this ERISA action on behalf of themselves and all others similarly situated against SB and the administrators of the SB

employee benefit plans. *See* Compl. (Doc. No. 1). On August 8, 2000, Thomas and Darden amended their complaint to add Allen as a named plaintiff and the benefit plans as defendants. *See* Am.Compl. (Doc. No. 5). On September 8, 2000, the defendants answered the amended complaint. *See* Answer (Doc. No. 9).

Although the amended complaint includes seven counts, the plaintiffs are seeking primarily declaratory and injunctive relief. In Count I, the plaintiffs ask for a declaratory judgment finding that, as a matter of law, the defendants should include them as participants in the benefit plans. *See id.* ¶¶ 101–07. In Count II, the plaintiffs request that the court appoint an independent fiduciary for each benefit plan. *See id.* ¶¶ 108–110. Count III asks the court to find that the defendants' refusal to allow common law employees to participate in the benefit plans violated 29 U.S.C. § 1140. *See id.* ¶¶ 111–16. Counts IV & V claim that the defendants breached their fiduciary duties in violation of 29 U.S.C. § 1104. *See id.* ¶¶ 117–29. In Count VI, the plaintiffs contend the defendants violated 29 U.S.C. § 1024(b)(1)(A) by failing to provide documents and information regarding the benefit plans to the plaintiffs. *See id.* ¶¶ 130–40. Finally, in Count VII, the plaintiffs assert that defendants violated 29 U.S.C. § 1052 by instituting a de facto extension of the minimum service provision of each benefit plan. *See id.* ¶¶ 141–45.

Currently pending before the court is the named plaintiffs' motion for class certification. The named plaintiffs ask the court to certify this action as a class action pursuant to Federal Rule of Civil Procedure 23(b)(2), (b)(1)(A), and/or (b)(1)(B). After setting forth the standard of review, I will evaluate the plaintiffs' motion for class certification.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 23 informs the consideration of a motion to certify a class action. In order to obtain class certification, the named plaintiffs must demonstrate that all four prerequisites of Rule 23(a), and at least one part of Rule 23(b), have been satisfied. *See Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 162–63, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974); *Barnes v. American Tobacco Co.,* 161 F.3d 127, 140 (3d Cir.1998); *In re Prudential Ins. Co. of Am. Sales Pracs. Litig.,* 148 F.3d 283, 308–09 (3d Cir.1998), *cert. denied,* 525 U.S. 1114, 119 S.Ct. 890, 142 L.Ed.2d 789 (1999); *Baby Neal v. Casey,* 43 F.3d 48, 55 (3d Cir.1994). Although a court may only certify a class "after a rigorous analysis," *General Tel. Co. of the Southwest v. Falcon,* 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982), the court does not examine the merits of plaintiffs' underlying claims. *See Eisen,* 417 U.S. at 177–78, 94 S.Ct. 2140; *Barnes,* 161 F.3d at 140. The court has the discretion and the duty to reassess a class certification decision as the litigation proceeds. *See* Fed.R.Civ.P. 23(c)(1) & (4); *Barnes,* 161 F.3d at 140.

## DISCUSSION

At oral argument, the named plaintiffs withdrew their proposed definition of the proposed main class.[1] Therefore, the court will only consider the plaintiffs' alternative argument: whether the proposed subclass should be certified as a separate and distinct class with Thomas and Darden as class representatives.[2] *See* Pls.' Reply 5.

Thomas and Darden seek certification of a class which consists of "those persons, now officially classified by SB as employees of SB to whom SB sent the form letter entitled 'Dear Colleague,' dated 'April, 2000'. . . ."

---

1. The hopelessly vague definition of the proposed main class was:

 All persons who work, or have worked, at SB in the United States, who are denied employee rights and benefits because SB classifies them in a manner other than as employees of SB, but who meet the definition of employees under ERISA and the SB plans.

 Pls.' Mem. 3.

2. Because the proposed subclass is the only class definition currently before the court, I will henceforth refer to the proposed subclass as the proposed class. Furthermore, because only Thomas and Darden seek certification of the proposed class, *see* Pls.' Mem. 3; Pls.' Reply 5, henceforth the term "named plaintiffs" refers only to Thomas and Darden. Plaintiffs also concede that Allen has never been a "regular" SB employee who qualifies under the April 2000 letter. *See* Pls.' Mem. 3 n. 1.

Pls.' Mot. for Order Certifying the Within Action as a Class Action ["Pls.' Mot."], Proposed Order 2 (Doc. No. 14). As noted above, the "Dear Colleague" letter was sent to approximately 1,100 individuals who were originally designated agency temporary employees but who were later hired by SB as full-time active employees. *See* Pls.' Reply 4. The defendants contest class certification on numerous grounds, focusing in particular on the commonality and typicality prerequisites of Rule 23(a).

I. Rule 23(a): Prerequisites to a Class Action

Before a class may be certified, Federal Rule of Civil Procedure 23(a) mandates a showing of numerosity, commonality, typicality, and adequacy of representation. Specifically, the rule provides:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a). Although these four prerequisites overlap, the Third Circuit has noted that there is a conceptual distinction between the first two prerequisites—numerosity and commonality—which evaluate the sufficiency of the class itself, and the last two prerequisites—typicality and adequacy of representation—which evaluate the sufficiency of the named class representatives. *See Hassine v. Jeffes,* 846 F.2d 169, 176 n. 4 (3d Cir.1988). I will consider each of these prerequisites in turn.

A. Numerosity

■ Rule 23(a)(1) requires a potential class to be "so numerous that joinder of all members is impracticable." Fed.R.Civ.P. 23(a)(1). For example, "[g]enerally, the numerosity requirement is satisfied where the class exceeds 100 members." *Kromnick v. State Farm Ins. Co.,* 112 F.R.D. 124, 126 (E.D.Pa.1986). However, a court must generally also evaluate the practicability of joinder in the context of the particular litigation. *See Gurmankin v. Costanzo,* 626 F.2d 1132, 1135 (3d Cir.1980). In undertaking this inquiry, the court is to be guided by common sense. *See In re Ikon Office Solutions, Inc.,* 191 F.R.D. 457, 462 (E.D.Pa.2000) [hereinafter "*In re Ikon*"].

■ Thomas and Darden allege that the class is comprised of over 1,000 people. *See* Pls.' Mem. 12. In particular, the named plaintiffs note that the defendants have admitted that they sent the April 2000 "Dear Colleague" letter to approximately 1,100 people. *See id.* (citing Ex. C, Dep. of Serocca p. 59). Defendants do not challenge the named plaintiffs' contention that their allegations satisfy the numerosity requirement of Rule 23(a)(1).

Regarding the impracticability of joinder, the class is materially indistinguishable from other ERISA classes certified in this district. *See Clauser v. Newell Rubbermaid, Inc.,* No. CIV.A. 99–5753, 2000 WL 1053395, at *3 (E.D.Pa. July 31, 2000) (finding a class of more than 600 people satisfies the numerosity requirement); *In re Ikon,* 191 F.R.D. at 462 (finding "the numerosity standard is easily met" by a class of ERISA plaintiffs numbering "thousands of participants in the plan in any given year"); *Feret v. Corestates Fin. Corp.,* No. CIV.A. 97–6759, 1998 WL 512933, at *6 (E.D.Pa. Aug. 18, 1998) (certifying an ERISA class of more than 200 people); *Bunnion v. Consolidated Rail Corp.,* No. Civ.A. 97–4877, 1998 WL 372644, at *3 (E.D.Pa. May 14, 1998) (finding a class of approximately 600 people satisfies numerosity requirement). In light of the number of class members and the nature of the action, the court concludes that the plaintiffs' class is numerous enough to make joinder impracticable.

B. Commonality

■ As a prerequisite to class certification, Rule 23(a)(2) requires the existence of "questions of law or fact common to the class." *See* Fed.R.Civ.P. 23(a)(2). "The commonality requirement will be satisfied if the named plaintiffs share at least one ques-

tion of fact or law with the grievances of the prospective class." *See Baby Neal,* 43 F.3d at 56; *see also Barnes,* 161 F.3d at 140 n. 15 (finding no error in such a standard). Common questions are those which arise from a "common nucleus of operative facts." *See Kromnick,* 112 F.R.D. at 128 (quotation omitted). Because Rule 23(a)(2) requires only a single issue common to all members of the class, the requirement is easily met, and commonality is not defeated by a showing that "individual facts and circumstances" will have to be resolved. *See Baby Neal,* 43 F.3d at 56–57; *In re Ikon,* 191 F.R.D. at 463.

Thomas and Darden claim that the April 2000 "Dear Colleague" letter SB sent to them and over 1,000 other individuals presents a number of common legal and factual issues. *See* Pls.' Mem. 15. Thomas and Darden claim that there are common questions as to whether the members of the proposed class were common law employees during the time SB classified them as leased employees, and, in particular, whether those who were common law employees should have accrued benefits or eligibility and vesting credits. *See* Pls.' Mem. 14. More generally, Thomas and Darden contend that there is a common question as to whether the administrators' interpretation that an "agency temporary" worker can *never* participate in a SB benefit plan is correct. *See* Pls.' Reply 9. Thomas and Darden also allege that there is a common question as to whether the defendants violated their fiduciary duty when, in their April 2000 "Dear Colleague" letter, they placed the burden of proving eligibility for additional benefits on participants in the plan. *See* Pls.' Mem. 14. Furthermore, Thomas and Darden claim that there is a common question as to whether injunctive relief is appropriate to remedy the error described in the April 2000 letter. *See id.* at 16.

The defendants contest the named plaintiffs' contention that their allegations satisfy the commonality requirement of Rule 23(a)(2). In particular, the defendants claim that the "overarching legal question" of whether the plaintiffs were common law employees under ERISA can only be answered after the court undertakes a series of individual fact-specific inquiries. *See* Defs.' Mem. 16; Defs.' Surreply 3 ("The fact remains that each recipient of that letter claiming entitlement to benefits during his pre-SmithKline period of agency employment will have to prove, consistent with plaintiffs' own construct, common law employee status under *Darden.*"). In particular, the defendants note that, under *Nationwide Mut. Ins. Co. v. Darden,* 503 U.S. 318, 112 S.Ct. 1344, 117 L.Ed.2d 581 (1992), a thirteen factor fact-intensive inquiry is used to determine whether a worker should be considered to be an employee for purposes of ERISA. *See* Defs.' Mem. 12–15. The defendants claim that "[t]here are no available shortcuts, and, [ ] this Court must undertake the [*Darden*] analysis on an individual basis." *See id.* at 15 (citing *NLRB v. United Ins. Co. of Am.,* 390 U.S. 254, 258, 88 S.Ct. 988, 19 L.Ed.2d 1083 (1968); *Siko v. Kassab, Archbold & O'Brien, L.L.P.,* No. CIV.A. 98–402, 1998 WL 464900, at *5 (E.D.Pa. Aug. 5, 1998)); Defs.' Surreply 3. Thus, the defendants assert that "common-law employee status is just the sort of question that cannot be characterized as common." *See* Defs.' Mem. 17 (citing *Holmes v. Pension Plan of Bethlehem Steel Corp.,* No. CIV.A. 98–1241, 1999 WL 554591, at *6 (E.D.Pa. June 30, 1999)) ("Commonality will not be found where the alleged common issues can only be resolved by making factual determinations that will be different for each class member."). Moreover, the defendants claim that categorical judgments about whether the plaintiffs were common law employees are not appropriate in this case because the named plaintiffs have not presented any evidence that their jobs were similar to those of members of the proposed class members. *See* Defs.' Mem. 18 (citing *Darden,* 503 U.S. at 327, 112 S.Ct. 1344).[3]

---

**3.** In one of the numerous explanatory footnotes of their response in opposition, the defendants set forth two additional grounds for contesting whether Thomas and Darden have satisfied the commonality requirement. *See* Defs.' Mem. 19 n. 19. First, the defendants argue that although the plaintiffs claim they are entitled to benefits under SB's ERISA plans, the "Dear Colleague" letter only addresses "the issue of proper crediting of prior service as agency employees towards the eligibility and vesting requirements of Smith-Kline's plans" and that it "does *not* speak to

Essentially, the defendants are claiming that the court should rely on *Georgine v. Amchem Prods., Inc.*, 83 F.3d 610 (3d Cir. 1996), instead of *Baby Neal* for guidance as to the threshold for satisfying the commonality prerequisite. *See* Defs.' Surreply 2 n. 2. (claiming that this case presents the sort of individualized issues that prevented the Third Circuit from certifying a class in *Georgine*). However, *Georgine* is clearly inapplicable to the case currently before this court. *See Bunnion*, 1998 WL 372644, at *3 n. 4. In *Georgine*, before concluding that the common issues did not predominate, the Third Circuit found that "each individual plaintiff's claim raise[d] *radically* different factual and legal issues from those of other plaintiffs." *Georgine*, 83 F.3d at 618 (emphasis added). Furthermore, the Third Circuit emphasized the fact that, in *Georgine*, the proposed class was requesting certification under 23(b)(3) and was not seeking injunctive relief.[4] *See id.* As noted above, in the case currently before this court, the plaintiffs are requesting certification under 23(b)(1) and 23(b)(2) and are seeking primarily injunctive relief.[5] Furthermore, the Third Circuit delineated the limited scope of its decision in *Georgine:* "We believe that the commonality barrier is higher in a personal injury damages class action, like this one, that seeks to resolve *all* issues, including noncommon issues, of liability and damages." *Id.* at 627. The Third Circuit also clearly stated that it was not establishing a high general threshold for satisfying commonality. *See id.* ("We proceed cautiously here because establishing a high threshold for commonality might have repercussions for class actions very different from this case . . . .").

Therefore, I will apply the threshold for satisfying the commonality requirement set forth in *Baby Neal.* As noted above, under *Baby Neal*, "[t]he commonality requirement is satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class." *See Baby Neal*, 43 F.3d at 56. Under this standard, commonality is not defeated by a showing that "individual facts and circumstances" will have to be resolved. *See Baby Neal*, 43 F.3d at 56–57; *In re Ikon*, 191 F.R.D. at 463. As the court noted in *Bunnion*, "[e]ven where facts unique to each plaintiff may be relevant, a class may still be certified, but later bifurcated." *Bunnion*, 1998 WL 372644, at *4. *See Baby Neal*, 43 F.3d at 57.

"For the purposes of class certification, the court is bound to take the substantive allegations of the complaint as true." *Cullen v. Whitman Med. Corp.*, 188 F.R.D. 226, 228 (E.D.Pa.1999) (citing *Blackie v. Barrack*, 524 F.2d 891, 901 n. 17 (9th Cir.1975), *cert. denied*, 429 U.S. 816, 97 S.Ct. 57, 50 L.Ed.2d 75 (1976)). Although the named plaintiffs needed to allege only one common question of law or fact, plaintiffs have alleged several. Thomas and Darden have presented common questions of law with regard to the administrators' interpretation of the plans' definition of the term "employee" and whether that interpretation violates ERISA. In particular, Thomas and Darden have presented common questions as to whether the members of the proposed class were common law employees during the time SB classified them as leased employees, and as to whether those who were common law employees should have accrued benefits or eligibility and vesting credits. Despite the defendants'

---

benefit entitlement." *Id.* Second, the defendants claim that, despite the fact that the plaintiffs are now claiming that the defendants breached a fiduciary duty by sending the "Dear Colleague" letter, the plaintiffs failed to make this allegation in their amended complaint. *See id.* Because these arguments relate more to the proper subject matter of a motion to dismiss than to a motion to certify a class, I will not address them in this opinion.

4. Rule 23(b)(3) requires that "the questions of law or fact common to the members of the class *predominate* over any questions affecting only individual members . . . ."

5. Despite the defendants' protestations, *see* Letter from Brian T. Ortelere to Chambers of 4/4/01, the Third Circuit's recent decision in *In re LifeUSA Holding Inc.*, 242 F.3d 136 (3d Cir.2001), is also inapposite. In particular, the Third Circuit found that "each individual plaintiff's claim raises *radically different* factual and legal issues from those of other plaintiffs." *Id.* at 145 (emphasis added). Instead of involving, as this case does, the uniform interpretations of written benefit plans by administrators, *LifeUSA* involved the disparate oral misrepresentations of 30,271 independent agents. *See id.* at 146.

protestations that these questions can only be resolved after undertaking fact-intensive inquiries, the plaintiffs have provided evidence that the administrators have treated the proposed class uniformly. *See* Pls.' Mem. 1–2 (citing Ex. C & J). Moreover, the court may be able to answer the question of whether individuals are common law employees under ERISA on a categorical basis for those employees with similar job descriptions. *See, e.g., Breedlove v. Tele–Trip Co., Inc.,* No. 91–C–5702, 1993 WL 284327, at *4 (N.D.Ill. July 27, 1993) (citing *Darden,* 503 U.S. at 327, 112 S.Ct. 1344). Although the defendants claim that the named plaintiffs have not shown that their jobs are similar to those of the rest of the class, *see* Defs.' Mem. 18–24, the plaintiffs have produced evidence that SB only uses workers from employment agencies to fill five classes of jobs and that all of the potential class members were covered under one contract with the temporary employment agencies. *See* Pls.' Reply 14–15 (citing Ex. M & N). Furthermore, Thomas and Darden have presented a common question as to whether an "agency temporary" worker can, under *any* circumstances, participate in a SB benefit plan.

Moreover, common questions of law and fact clearly exist as to whether the defendants owe the plaintiffs a fiduciary duty, and, if they do, as to whether the defendants conducted themselves in a manner incompatible with that fiduciary duty. As the plaintiffs have noted, "the appropriate focus in a breach of fiduciary duty claim is the conduct of the defendants, not the plaintiffs." *See In re Ikon,* 191 F.R.D. at 465 (citing *Bunnion,* 1998 WL 372644, at *6). As a result, the presence of factual differences does not obscure the existence of common factual and legal issues. In particular, Thomas and Darden have presented a common question as to whether the defendants violated their fiduciary duty when, in their April 2000 "Dear Colleague" letter, they placed the burden of proving eligibility for additional benefits on participants in the plan. Furthermore, the named plaintiffs have presented a common question as to whether injunctive relief is an appropriate remedy for the error described in the April 2000 letter.

Therefore, I conclude that Thomas and Darden have satisfied the Rule 23(a)(2) commonality requirement.

## C. Typicality

Rule 23(a)(3) requires the court to determine whether the "claims or defenses of the representative parties are typical of the claims or defenses of the class." *See* Fed. R.Civ.P. 23(a)(3). "The typicality inquiry is intended to assess whether the action can be efficiently maintained as a class and whether the named plaintiffs have incentives that align with those of absent class members so as to assure that the absentees' interests will be fairly represented." *See Baby Neal,* 43 F.3d at 57. This inquiry focuses on "whether the named plaintiff's individual circumstances are markedly different or ... the legal theory upon which the claims are based differs from that upon which the claims of other class members will perforce be based." *See id.* at 57–58 (quotation omitted). The court must, in effect, discern whether potential conflicts exist within the proposed class. *See Baby Neal,* 43 F.3d at 57; *In re Ikon,* 191 F.R.D. at 465. Typicality will generally be found to exist when the named plaintiffs and the proposed class members "challenge[ ] the same unlawful conduct." *Baby Neal,* 43 F.3d at 58. Therefore, "[f]actual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the class members, and if it is based on the same legal theory." *Baby Neal,* 43 F.3d at 58 (quotation omitted). "Indeed, even relatively pronounced factual differences will generally not preclude a finding of typicality where there is a strong similarity of legal theories." *See Baby Neal,* 43 F.3d at 58.

Thomas and Darden claim that they satisfy the typicality prerequisite because all of the members of the proposed class were sent the same boilerplate letter from SB, and, "[l]ike every other member of [the] proposed [class], [they] claim that SB failed to properly interpret and administer the SB plans in awarding them benefits and credits for the time they were classified as agency temps." Pls.' Reply 22.

The defendants contest typicality on three grounds: 1) the named plaintiffs have not demonstrated that their individual circumstances are similar to those of other members of the proposed class, *see* Defs.' Mem. 26; 2) unlike the named plaintiffs, the putative class members have not exhausted their administrative remedies, *see id.* at 32–38; and 3) unlike the putative class members, the named representatives are subject to statute of limitations defenses. *See id.* at 38–42.

■ The defendants claim that the named plaintiffs cannot satisfy the typicality requirement because they have not proven that their individual circumstances are similar to those of the other proposed class members. This argument misinterprets the typicality requirement. As noted above, typicality will generally be found to exist when the claims of the named plaintiffs arise from the same course of conduct that gives rise to the claims of the proposed class members. As a result, "even relatively pronounced factual differences will generally not preclude a finding of typicality where there is a strong similarity of legal theories." *See Baby Neal,* 43 F.3d at 58. As noted above, in this case, the legal theories of both the named plaintiffs and the proposed class members arise from apparently uniform interpretations of the plan documents. That the job descriptions of the named plaintiffs may differ from those of the proposed class members does not preclude a finding of typicality.

■ The defendants also claim that the named plaintiffs cannot satisfy the typicality requirement because the proposed class members have not exhausted their administrative remedies. Although the defendants concede that the named plaintiffs have exhausted their administrative remedies, the defendants claim that the rest of the putative class members' failure to exhaust their administrative remedies precludes certification. *See* Defs.' Mem. 33. Defendants are correct that the exhaustion of administrative remedies is generally required before a plaintiff can sue under ERISA. *See Berger v. Edgewater Steel Co.,* 911 F.2d 911, 916 (3d Cir. 1990), *cert. denied,* 499 U.S. 920, 111 S.Ct. 1310, 113 L.Ed.2d 244 (1991). However, in the context of an ERISA class action, only the *named plaintiffs* must exhaust their administrative remedies. *See* Frank Cummings, *ERISA Litigation: An Overview of Major Claims and Defenses,* SF76 ALI–ABA 353, 521 (Jan. 18, 2001) ("And in those few cases where a[n ERISA] class action has been dismissed for lack of exhaustion, the deciding factor seems to have been lack of exhaustion by the named plaintiff(s), not by the members of the class."). Moreover, "courts have recognized an exception when resort to the administrative process would be futile." *Berger,* 911 F.2d at 916. Given the defendants' apparent uniform interpretation of the plan documents, requiring each of the proposed class members to exhaust his or her administrative remedies would be futile. *See Bunnion,* 1998 WL 372644, at *7–8.

■ Finally, the defendants claim that the named plaintiffs cannot satisfy the typicality requirement because they are subject to statute of limitations defenses. The Third Circuit has held that, in deciding a motion for certification of a class action, the court does not examine the merits of plaintiffs' underlying claims. *See Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177–78, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974); *Barnes v. American Tobacco Co.,* 161 F.3d 127, 140 (3d Cir.1998). As a result, although the defendants cite several cases to the contrary, *see* Defs.' Mem. 38–42 (citing *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.,* 222 F.3d 52, 59 (2d Cir. 2000); *Auto Ventures, Inc. v. Moran,* No. 92–426–CIV–KEHOE, 1997 WL 306895, at *5 (S.D.Fla. Apr. 3, 1997); *In re U.S. Healthcare, Inc.,* No. 88–0559, 1988 WL 102671, at *3–4 (E.D.Pa. Sept. 29, 1988)), the overwhelming weight of authority in the Third Circuit has held that the question of whether the named plaintiffs' claims are time-barred is inappropriate for adjudication at the class certification stage. *See, e.g., Cullen,* 188 F.R.D. at 230–31 ("While the statute of limitations defense may ultimately affect an individual's right to recover, it does not affect the presentation of the liability issue for the plaintiffs' class. The question for a class certification determination is not whether plaintiff has stated a cause of action on the merits, but whether the plaintiffs have met the requirements of Rule 23."); *Gruber v.*

*Price Waterhouse,* 117 F.R.D. 75, 80 (E.D.Pa.1987) ("[T]he statute of limitations defense goes to the merits of plaintiffs' complaint and therefore is beyond the scope of a motion for class certification."); *Rishcoff v. Commodity Fluctuations Sys., Inc.,* 111 F.R.D. 381, 382–83 (E.D.Pa.1986) ("Thus, we, too, conclude that issues relating to whether certain claims may be barred by the statute of limitations are irrelevant to the question of whether a class should be certified and will not be considered in determining the propriety of allowing the case to proceed as a class action."); *Fickinger v. C.I. Planning Corp.,* 103 F.R.D. 529, 532 (E.D.Pa.1984) ("Consideration of the affirmative defense of statute of limitations would be an impermissible intrusion into the merits of the case.").

Because the claims of Thomas and Darden arise from the same course of conduct by SB, the court concludes that the claims of Thomas and Darden are typical of the claims of the absent class members.

### D. Adequacy of Representation

■ Before certifying a class, a court must find that "the representative parties will fairly and adequately protect the interests of the class." *See* Fed.R.Civ.P. 23(a)(4). The adequacy of representation inquiry has two components designed to ensure that the absent class members' interests are fully pursued. In order to satisfy the first component, "the interests of the named plaintiffs must be sufficiently aligned with those of the absentees." *See Georgine,* 83 F.3d at 630. In order to satisfy the second component, "class counsel must be qualified and must serve the interests of the *entire* class." *Id.* The burden is on the defendants to show the inadequacy of representation of a plaintiffs' class. *See Lewis v. Curtis,* 671 F.2d 779, 788 (3d Cir.1982).

Thomas and Darden aver that there is no conflict of interest between the named plaintiffs and other class members and that "plaintiffs' attorneys are experienced in the area of class action litigation." Pls.'s Mem. 18. Defendants do not challenge the named plaintiffs' contention that their allegations satisfy the adequacy of representation requirement of Rule 23(a)(4).

■ First, because the named plaintiffs are challenging the same unlawful conduct and seeking the same relief as the rest of the class, I find that the interests of the named plaintiffs are sufficiently aligned with those of the class members to satisfy the first prong of the adequacy of representation requirement. In particular, I note that the right to relief of the named plaintiffs, like that of the absent class members, depends on demonstrating that the defendants violated the terms of the plans, violated provisions of ERISA, and breached their fiduciary duties. Second, because the named plaintiffs' attorneys have extensive experience litigating class actions and ERISA actions, *see* Pls.' Mem. 18, the named plaintiffs' attorneys appear qualified to prosecute the action on behalf of the class. Therefore, the court concludes that plaintiffs have satisfied the requirement of Rule 23(a)(4) that they will adequately represent the class.

## II. Rule 23(b): Class Actions Maintainable

Thomas and Darden seek certification pursuant to subsections (b)(1) and (b)(2). *See* Pls.' Mem. 19–23. Certification under either of these subsections constitutes a mandatory class. The defendants do not challenge the named plaintiffs' contention that their class action is maintainable under Rule 23(b)(1)(A), 23(b)(1)(B), and/or 23(b)(2). Because neither the plaintiffs nor the defendants have expressed a preference for certification under Rule 23(b)(1)(A), 23(b)(1)(B), or 23(b)(2), I will determine whether certification is appropriate under each section.

### A. Rule 23(b)(1)

Rule 23(b)(1) defines two related types of class actions, both designed to prevent prejudice to the parties arising from multiple potential suits involving the same subject matter. Rule 23(b)(1)(A) is designed to prevent prejudice to the party opposing the class, and Rule 23(b)(1)(B) is designed to prevent prejudice to potential members of the class. "Certifications under both of these clauses are common in labor relations cases because defendants often provide 'unitary treatment to all members of [a] putative class [in this] . . .

area' and thus the rights of absent 'class member[s] [are often] ... implicated by litigation brought by other class members.'" *Feret*, 1998 WL 512933, at *13 (quoting James Wm. Moore, 5 Moore's Federal Practice §§ 23.41[4], 23.42[3][c] (3d ed. 1998)).

### 1. Rule 23(b)(1)(A)

 Plaintiffs seek certification pursuant to Rule 23(b)(1)(A). In order to maintain a class action under subsection (b)(1)(A), the named plaintiffs must show that "the prosecution of separate actions by or against individual members of the class would create a risk of (A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class." *See* Fed.R.Civ.P. 23(b)(1)(A). Certification under this subsection constitutes a mandatory class, from which class members may not opt out of the action to "pursue litigation that might prejudice other class members or the defendant." *Bunnion*, 1998 WL 372644, at *13 (quotation omitted).

The court concludes that plaintiffs' claims are appropriate for certification under Rule 23(b)(1)(A). As noted above, the plaintiffs seek broad declaratory and injunctive relief related to defendants' conduct and the terms of the plan. If this relief were granted in some actions but denied in others, the conflicting declaratory and injunctive relief could make compliance impossible for defendants. *Cf. In re Ikon*, 191 F.R.D. at 466; *Bunnion*, 1998 WL 372644, at *13. Therefore, I will certify the class pursuant to Rule 23(b)(1)(A).

### 2. Rule 23(b)(1)(B)

 Plaintiffs also seek certification pursuant to Rule 23(b)(1)(B). Rule 23(b)(1)(B) is used when separate actions might lead to adjudications that could be dispositive of nonparty class members' interests or substantially impair their ability to protect their interests. *See WB Music Corp. v. Rykodisc, Inc.*, No. CIV.A. 94–2902, 1995 WL 631690, at *3 (E.D.Pa. Oct. 26, 1995).

The court concludes that plaintiffs' claims are appropriate for certification under Rule 23(b)(1)(B). As noted above, the plaintiffs claim that the defendants have breached their fiduciary duties under ERISA. Any decision regarding whether the defendants breached their fiduciary duties would necessarily affect the interests of other participants. Therefore, I will certify the class pursuant to Rule 23(b)(1)(B).

### B. Rule 23(b)(2)

 Rule 23(b)(2) permits an action to be maintained as a class action when "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed. R.Civ.P. 23(b)(2). Plaintiffs must make two showings in order to proceed under Rule 23(b)(2). First, the complaint must seek relief which is predominantly injunctive or declaratory. *See Barnes*, 161 F.3d at 142. Second, plaintiffs must complain that defendants "acted or refused to act on grounds generally applicable to the class." Fed. R.Civ.P. 23(b)(2). Such a showing is made when the defendant's conduct constitutes a pattern of activity. *See Hurt v. Philadelphia Housing Auth.*, 151 F.R.D. 555, 560–61 (E.D.Pa.1993). A factual dispute about the existence of a pattern of conduct does not preclude certification. *See Dickerson v. United States Steel Corp.*, 64 F.R.D. 351, 358 (E.D.Pa.1974).

 First, as noted above, the named plaintiffs are seeking primarily declaratory and injunctive relief. Second, as noted above, the named plaintiffs have alleged, and produced some evidence, that the defendants have uniformly interpreted the plan documents. Therefore, I will certify the class pursuant to Rule 23(b)(1)(B).

### CONCLUSION

Plaintiffs have moved the court to certify this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure. Having reviewed the record, I will grant the motion to certify the proposed class of approximately 1,100 individuals who were sent the April 2000 "Dear Colleague" letter from SB. First, the court finds that the class of over 1,000 individuals is so numerous as to

render joinder impracticable. Second, the record reveals that several common questions of fact and law exist regarding defendants' obligations to plaintiffs and whether defendants' actions violated the plan or ERISA rights. Third, the claims of the named plaintiffs are typical of those of the absent class members as both arise out of the same events and are premised on the same legal theories. Fourth, because the named plaintiffs have interests that sufficiently align with those of the absent class members, and they have obtained qualified counsel, they are adequate representatives of the class. Finally, plaintiffs have shown that certification is proper under Rule 23(b)(1)(A), 23(b)(1)(B), and 23(b)(2).

An appropriate order follows.

### Order

And now, this 3rd day of July, 2001, upon consideration of the named plaintiffs' amended complaint (Doc. No. 5), named plaintiffs' motion for class certification (Doc. No. 14), defendants' opposition thereto (Doc. No. 15), named plaintiffs' reply (Doc. No. 16), defendants' surreply (Doc. No. 17), numerous supplementary filings, and oral argument, it is hereby ORDERED AND DECREED that:

1. This action is certified as a class action under Fed.R.Civ.P. 23(b)(1)(A), 23(b)(1)(B), and 23(b)(2);

2. The class consists of "those persons, now officially classified by SB as employees of SB to whom SB sent the form letter entitled 'Dear Colleague,' dated 'April, 2000' . . . ."; and

3. Because this is a compulsory class, notice shall be sent to each of the class members advising them of the pendency of the action and their ability to hire their own attorney. Defendants shall provide to plaintiffs' counsel a list of the names and addresses of those persons to whom the April 2000 "Dear Colleague" letter was sent within fifteen (15) days of the date hereof. Plaintiffs' counsel shall provide a copy of the proposed notice to the court and defendants' counsel within fifteen (15) days of the date hereof, and defendants may comment on this proposed notice by letter to the court within ten (10) days thereafter.